IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARL JOHNSON, | ) | Case No. 1:17-cv-2143 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| LYNEAL WAINWRIGHT, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    Introduction

Petitioner Carl Johnson[1], an Ohio prisoner serving an aggregate prison sentence of twenty-four years for trafficking and possession of drugs and for having weapons under disability, has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254.  Johnson claims that his convictions and sentences in *State v. Johnson*, Richland County Court of Common Pleas No. 2015-CR-0585, as affirmed in *State v. Johnson*, Richland App. No. 15-CA-114, 2016-Ohio-5611, 2016 Ohio App. LEXIS 3480, violated his constitutional rights.  ECF Doc. 1.  Respondent, Warden Lyneal Wainwright, filed a return of writ on October 10, 2017.  ECF Doc. 8.  Johnson filed a traverse on January 5, 2018.  ECF Doc. 9.  This matter is before me by automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Johnson's petition.  Because each of Johnson's claims is procedurally defaulted, noncognizable, or

---

[1] A public records search reveals that Carl E. Johnson, Jr., inmate no. A674885, is housed at the Marion Correctional Institution, where respondent, Lyneal Wainwright, is warden.  (Websites last visited 8/2/19.)

meritless, I recommend the Court DISMISS each of his grounds for relief, DENY his motion for an evidentiary hearing and DENY Johnson's petition for writ of habeas corpus (ECF Doc. 1).

## II.    State Court History

### A.    State Trial Court Proceedings, Case No. 2015-CR-0585

On May 28, 2015, a Richland County, Ohio grand jury indicted Johnson on six counts of drug trafficking (cocaine, heroin, and marijuana) in violation of Ohio Rev. Code § 2925.03(A)(2) and (C)(3)(a); three counts of drug possession (cocaine, heroin, and marijuana) in violation of Ohio Rev. Code § 2925.11(A) and (C)(3)(a); and one count of having weapons under disability in violation of Ohio Rev. Code § 2923.14.  ECF Doc. 8-1 at 4-8.  On July 21, 2015, Johnson pleaded not guilty.  ECF Doc. 8-1 at 9

Johnson's trial began on November 30, 2015; and on December 4, 2015, the jury found him guilty of all counts.  The court sentenced Johnson to twenty-four years in prison.  ECF Doc. 8-1 at 24, 35.

### B.    Direct Appeal, Case No. 15-CA-114

On December 30, 2015, Johnson, through counsel, appealed to the Ohio Court of Appeals.  ECF Doc. 8-1 at 37.  Johnson raised the following assignments of error:

1.  Mr. Johnson's convictions were against the manifest weight of the evidence, so they must be reversed and the case remanded for a new trial.

2.  The trial court erred by failing to suppress Appellant's statements, to which officers testified during the trial, where Appellant testified that he made those statements without having been read his Miranda warnings and where Appellant was questioned by law enforcement while under detention.

3.  Defense counsel rendered ineffective assistance of counsel as follows: 1) the State's witness, during cross examination was prompted by defense to read Appellant's inculpatory statements into the record, verbatim, from the officer's supplemental narrative police report; 2) defense counsel failed to question the confidential informant as to whether the confidential informant tampered with the evidence collected during the

2

controlled buys when the value of the drugs solicited was $100 but the value of the drugs collected was $20; 3) defense counsel did not move for specific discovery seeking text messages between the State and Appellant; 4) defense counsel did not question any of the State's witnesses concerning touch DNA of the firearm; 5) defense counsel confused the jury and undermined the credibility of the theory of the defense case during closing argument by a) referencing that the children in his family think it's time for him to quit practicing law, b) comparing the confidential informant in the case to Judas, Benedict Arnold, and Mata Hari, c) making distracting literary references throughout closing argument, d) insinuating that the police fabricated evidence without any proof whatsoever of the same, and e) most significantly, by telling the jury that they are missing evidence – the very evidence that the trial judge ruled inadmissible – which drew an objection by the State during closing argument.

ECF Doc. 8-1 at 42.  On August 26, 2016, the Ohio Court of Appeals affirmed Johnson's convictions and sentences.  *Id.* at 100-114.  The court of appeals determined that there was sufficient credible evidence to support the convictions, overruling Johnson's manifest weight of the evidence assignment of error.  *Id.* at 106.  The court of appeals also found that, because officers testified that Johnson had been read his Miranda rights and that the jury did not unreasonably rely on this testimony, the trial court did not err in denying Johnson's motion to suppress his statements to police officers.  *Id.* at 109.  Further, the court of appeals failed to find any deficiency by Johnson's trial counsel as asserted by Johnson.  *Id.* at 113.

### C.    Motion for Delayed Appeal to the Ohio Supreme Court, Case No. 2016-1544

On October 17, 2016, Johnson filed an untimely *pro se* notice of appeal and a motion for leave to file an untimely direct appeal to the Ohio Supreme Court.  *Id.* at 115-121.  Johnson's motion asserted that he failed to timely appeal because he was awaiting copies of his transcripts from his appellate attorney that had been delayed due to an error in the mailing address.  *Id.* at 118.  On December 14, 2016, the Ohio Supreme Court denied Johnson's motion for a delayed appeal and dismissed the case.  *Id.* at 137.

**D.      Motion for Reconsideration of Denial of a Delayed Appeal**

On December 27, 2016, Johnson filed a *pro se* motion requesting the Ohio Supreme

Court to reconsider its decision to deny his motion for a delayed appeal.  *Id.* at 138.  In support

of his motion, Johnson attached correspondence from the Richland Court of Common Pleas

dated December 8, 2016 which acknowledged that the court of common pleas sent him his

transcript on November 21, 2016.  *Id.* at 141.  Johnson also attached a request he filed with the

correctional facility's mail room in in an attempt to demonstrate that he did not receive his

paperwork from his appellate counsel until October 20, 2016.  *Id.* at 142-43.  On December 30,

2016, the Ohio Supreme Court denied Johnson's motion to reconsider the dismissal of his case.

*Id.* at 144.

**E.      App. R. 26(B) Application to Reopen Direct Appeal**

On November 8, 2016, Johnson filed a *pro se* Ohio App. R. 26(B) application to reopen

his direct appeal.  *Id.* at 145.  In his application, Johnson alleged that his appellate counsel was

constitutionally ineffective on the following grounds:

> (2) My Appeal Counsel failed to argue that the State failed to preserve and disclose text
> messages between Confidential Informant Bobbi Stone and myself. The messages would
> have been helpful because they would have proven that I did not live at the apartment that
> the police found the drugs in and would have proven multiple people lived there.  The
> state failed to preserve the text messages and disclosed it to the defense see State v.
> Russell 2011 WL 494744 OHIO App 8 Dist. 2011-Ohio-592 Failure to Disclose Evid see
> also State v. Greeslin 116 OHIO ST 3d 252, 878 N.E 2d, 2007-OHIO-5239 failure to
> Preserve Evidence.

> (3) The investigator in this case Det Blust admitted that he found the drugs in a big
> Kroger bag transcript page 94.  He took the drugs out of that bag and put them in several
> individual bags to make it appear as thought these drugs were packaged for sale thereby
> increasing the penalty and charges.  Det. Blust stated that the Kroger bag was disregarded
> transcript page  The evidence would have been helpful.  The bag could have been tested
> for finger prints and DNA.  See State v. Russell, Failure To Disclose Evidence and State
> v. Greeslin Failure To Preserve Evidence.

4

(4)  Appeal Attorney John Boyd put forth two Constitutional Rights Violations that were meritless and had no chance of prevailing on the Appeal.  Assignment of error 2 which claimed that I gave a Statement without being read my Miranda Rights, this is considered Hearsay Det Blust said I was read my rights and gave a damaging statement.

(5)  My Appeal Counsel put forward a second Constitutional Rights Violation of Ineffective Assistance of Counsel.  In OHIO all Attorney's are presumed to be competent therefore this issue had no chance to prevail.

(6)  My Appeal Counsel refused to send me a copy of my trial transcript for review.  I needed a copy of the transcripts to assist in my Appeal filing moreover, his failure to send me a copy of this transcript forced me to file a delayed Appeal to The Supreme Court Of Ohio.

(7)  My Appeal Attorney failed to attend the oral argument in my case before The Court Of Appeals, this was prejudicial to my Appeal.

*Id.* at 147.  The state filed an opposition brief to the motion to reopen (*Id*. at 152), and Johnson filed a response in support.  *Id*. at 160.[2]  The Ohio Court of Appeals denied Johnson's motion to reopen his direct appeal.  *Id.* at 165.  Johnson did not appeal that decision to the Ohio Supreme Court.

## III.    Federal Habeas Corpus Petition

On December 10, 2017, Johnson filed his petition for writ of habeas corpus.  ECF. Doc. 1.  Johnson's petition raises four grounds for relief:[3]

---

[2] Johnson's response in support clarified a seemingly against-interest statement he made in his Ohio App. R. 26(B) application to reopen concerning his second assignment of error from his direct appeal. Johnson's application characterized that assignment of error – which asserted that he was not given *Miranda* warnings before making statements to the police – as "meritless [with] no chance of prevailing on the Appeal."  Upon review, I conclude Johnson was arguing that his appellate counsel should have raised a hearsay argument concerning the assertion by Detective Blust that Johnson made incriminating statements after he was read *Miranda* warnings, particularly since the police had nothing in writing from Johnson to confirm he had actually been read *Miranda* warnings and intelligently waived his *Fifth* and *Sixth Amendment* rights.  Apparently, Johnson is contending that the manner in which his appellate counsel framed the issue – as merely a battle between the testimony of Johnson and Blust – had no chance of success.  Johnson's argument reflects a misunderstanding of what hearsay is.  The state is always allowed to introduce the out of court statements of the defendant, because statements of an opposing party are not hearsay under Ohio Evid. R. 801(D)(2).

[3] In his memorandum in support of his petition, Johnson argues his grounds for relief in a different order.

**GROUND ONE:**  The trial court committed reversible error in failing to suppress petitioner's statements, to which officers testified during trial, when petitioner testified that he made those statements without having been read his Miranda rights and where petitioner was interrogated by officers while under custodial detention.

**GROUND TWO:** Defense counsel rendered ineffective assistance as follows: (1) the state's witness, during cross-examination, was prompted by defense to read appellant's inculpatory statements into the record, verbatim, from the officer's supplemental narrative police report; (2) defense counsel failed to question the confidential informant as to whether the confidential informant tampered with the evidence collected during controlled buys when the value of the drugs solicited was $100 but the value of the drugs collected was $20; (3) defense counsel did not move for specific discovery seeking text messages between the state and appellant; (4) defense counsel did not question any of the state's witnesses concerning touch DNA of the firearm; (5) defense counsel confused the jury and undermined the credibility of the theory of the defense case during closing argument by (a) referencing that the children in his family think it's time for him to quit practicing law, (b) comparing the confidential informant in the case to Judas, Benedict Arnold and Mata Hari, (c) making distracting literary references throughout closing argument, (d) insinuating that the police fabricated evidence without any proof whatsoever of the same, and (e) most significantly, by telling the jury that they are missing evidence — the very evidence that the trial judge ruled was inadmissible — which drew an objection by the state during closing argument.

**GROUND THREE:**  Petitioner was denied due process in violation of the Fifth and Fourteenth Amendments of the United State Constitution when the trial court convicted him based on insufficient evidence.

**GROUND FOUR:**  Petitioner received ineffective assistance of counsel on appeal in violation of his Sixth Amendment right under the Ohio and United States Constitution.

ECF Doc. 1-1 at 1-2.  Johnson also requests an evidentiary hearing.  *Id.* at 2.

## IV.    Applicable Habeas Corpus Legal Principles

### A.    AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs habeas corpus petitions filed after April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh*, 521 U.S. at 333 n.7, and "demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  When the claims presented in a habeas corpus petition have been presented to and

decided on the merits by the state courts, a federal court may not grant relief unless the

petitioners proves that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Habeas courts review the "last *explained* state-court judgment" on the

federal claim at issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).

Further, habeas review is limited to the record that was before the state court when it adjudicated

the claim on the merits.  28 U.S.C. § 2254(d)(2) (requiring petitioners to show that the state

court's factual determination was unreasonable "in light of the evidence presented in the state

court proceeding"); *Cullen v. Pinholster*, 563 U.S. 170, 185 & n.7 (2011).

A decision is unreasonable only if it "was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any reasonable possibility for

fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  The reviewing court

may not "treat[] the reasonableness question as a test of its confidence in the result it would

reach under *de novo* review, and "even a strong case for relief does not mean the state court's

contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102; *see also Schriro v.

Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal

court believes the state court's determination was incorrect but whether that determination was

unreasonable – a substantially higher threshold.").  "A state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the

correctness of that decision."  *Harrington*, 526 U.S. at 88 (quoting *Yarborough v. Alvarado*, 541

U.S. 652, 664 (2004)).  Even when the state court provided little or no reasoning for its decision,

the denial of a federal claim that was presented to a state court is presumed to be "on the merits," unless the state court or state law procedural principals indicate otherwise.  *Harrington*, 562 U.S. at 99.  "Whe[n] a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id.* at 98.  This standard is intentionally "difficult to meet," because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington*, 526 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 322 n.5 (1979)).

"Clearly established federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the United States Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *see also White v. Woodall*, 572 U.S. 415, 420 (2014) (holding that clearly established federal law includes "only the holdings," and not the dicta, of Supreme Court decisions).  Thus, to show that a decision was contrary to clearly established federal law, a habeas petitioner must show that the state court: (1) "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  The state court decision need only reach a result and apply reasoning consistent with Supreme Court precedent, and need not refer to, or even demonstrate awareness of, relevant Supreme Court cases.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  Furthermore, when Supreme Court precedent is ambiguous or nonexistent, a state court cannot act contrary to clearly established federal law. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

To show that a state court decision is an "unreasonable determination of the facts" under § 2254(d)(2), a petitioner has the burden of presenting clear and convincing evidence that the

8

state court made a clear factual error.  *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003); *Burt v. Titlow*, 571 U.S. 12, 18 (2013).  This is because AEDPA affords state court factual determinations a "presumption of correctness."  28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).

### B.  Exhaustion and Procedural Default

Before a federal court can review a state prisoner's habeas petition, AEDPA requires that the state prisoner exhaust all available state remedies.  28 U.S.C. § 2254(b), (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  To exhaust available remedies, the state prisoner must give state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) ("[T]he highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims.").  The exhaustion requirement "refers only to remedies still available at the time of the federal petition."  *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("[S]tate-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.").  It "does not require pursuit of a state remedy [when] such a pursuit is clearly futile."  *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).  If the highest court in a state has not reviewed the petitioner's federal constitutional claims, then federal courts may not review them either, except under strictly limited circumstances.

Separate from the exhaustion requirement, the doctrine of procedural default bars federal court review of a habeas petitioner's federal constitutional claim when the petitioner failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of

the petitioner's claim; or (2) fairly present the claim before the state courts while state remedies were still available.  *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  In determining whether there has been a procedural default, the federal court looks to the last explained state court judgment.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

The Sixth Circuit has directed courts to apply a four-part test when the state argues that a state prisoner's claim is defaulted due to the prisoner's failure to observe a state procedural rule.  *See Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v.* Smith, 785 F.2d 135, 138 (6th Cir. 1986)).  First, the court determines whether the state prisoner failed to comply with an applicable state procedural rule.  *Id.*  Second, the "court must determine whether the state courts actually enforced the state procedural sanction – that is whether the state courts actually based their decisions on the procedural rule."  *Id.*  Third, the court looks to whether the state procedural rule is an "adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim."  *Id.*; *see also Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991) (explaining that the application of an "independent" state law ground must not rely in any part on federal law); *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009) (explaining that an "adequate" state procedural rule must be "firmly established and regularly followed" by state courts at the time it was applied).  Finally, the court must determine whether the petitioner "can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice."  *Williams*, 260 F.3d at 693.

When the state asserts that the prisoner failed to "fairly present" the federal constitutional claim in state court, the court looks to: (1) whether the petitioner failed to assert both the legal and factual basis for his claim through the state's ordinary review process; and (2) whether state

law no longer allows the petitioner to raise his claim at the time he filed his federal habeas petition. *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848, and *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, the "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition." *Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) (citing *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001), *Scott v. Mitchell*, 209 F.3d 854, 865-68 (6th Cir. 2000), and *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985)).

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* In assessing prejudice, the reviewing court should assume that the petitioner has stated a meritorious constitutional claim and proceed to discern whether the assumed constitutional error actually prejudiced the petitioner. *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982). There is no prejudice when the petitioner does not show a reasonable probability of a different verdict had the alleged constitutional error not occurred. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

"A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*,

11

477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal

insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To be credible, such a

claim requires petitioner to support his allegations of constitutional error with new reliable

evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## V.    Relevant Ohio Law

An Ohio criminal defendant has 30 days from the date his conviction and sentence

become final to file a timely direct appeal.  Ohio R. App. P. 4(A).  On direct appeal, the

appellant may only present claims based on issues captured in the trial court record.  *See State v.*

*Johnson*, No. 97698, 2012-Ohio-3812 at ¶28 (Ohio Ct. App. 2012) ("On direct appeal we are

limited to a review of the trial record.").  In non-capital cases, an Ohio criminal defendant must

generally file a notice of appeal to the Ohio Supreme Court and memorandum in support of

jurisdiction within 45 days after the Ohio Court of Appeals' judgment.  *See* Ohio S. Ct. Prac. R.

7.01(A)(1).  If the defendant fails to file a timely appeal from a decision affirming a felony

conviction, the defendant may seek leave to file a delayed appeal to the Ohio Supreme Court.

Ohio S. Ct. Prac. R. 7.01(A)(4).  If the defendant does not file a timely appeal to the Ohio

Supreme Court, and the court does not grant a motion for a delayed appeal, the Ohio Supreme

Court is divested of jurisdiction over the defendant's appeal.  *Cf.* Ohio S. Ct. Prac. R.

7.01(A)(1)(b).

## VI.    The Facts

Analysis of Johnson's petition begins with the facts recited in the Ohio Court of Appeals

opinion on direct appeal.  These factual findings are presumed correct unless Johnson rebuts

them with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Wiggins*, 539 U.S. at 528-29;

*Burt*, 571 U.S. at 18.  The Ohio Court of Appeals found the following facts:

{¶ 10} Appellant was convicted of counts 1, 3, 8 of trafficking in cocaine, heroin, and marijuana in violation of R.C. 2925.03(A)(2) which states: (A) No person shall knowingly do any of the following: (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or controlled substance analog is intended for sale or resale by the offender or another person.

{¶ 11} These counts stem from the execution of the search warrant at 373 Jennings Avenue, Apartment C, Mansfield, Ohio. Numerous items found on the premises were items generally associated with drug trafficking. Appellant admitted to the police officers that he was the sole resident of the apartment, and his personal items were located throughout the apartment. Appellant also sent a letter to a friend, Brianna Daniels, encouraging her to lie about where he lived.

{¶ 12} Appellant was convicted on Counts 4, 5 and 6 of trafficking in heroin in violation of R.C. 2925.03(A)(1) which states: "[n]o person shall knowingly do any of the following: ***[s]ell or offer to sell a controlled substance or a controlled substance analog."

{¶ 13} These counts stem from the controlled buys to the confidential informant, Bobbi Stone, on March 17, and 30, 2015, and May 27, 2015. Appellant specifically challenges the informant's credibility. Bobbi Stone testified to the procedures used for the controlled buys, and testified she purchased heroin from appellant on the aforementioned dates. The telephone calls between appellant and Ms. Stone, as well as the controlled buys, were recorded, and the recordings were played to the jury. Each time, Ms. Stone identified appellant as the individual who sold her the heroin.

{¶ 14} Ms. Stone's testimony was corroborated by the police officers. Mansfield Police Department Sergeant Steve Blust and Ashland Police Department Officer Brian Evans, both working for the Metrich Enforcement Unit, a drug task force, testified to the procedures used and to listening to and observing the telephone calls between appellant and Ms. Stone and monitoring the controlled buys between the two.

{¶ 15} Appellant was convicted on Count 10 of having weapons under disability in violation of R.C. 2923.13(A)(3) which states: (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance, if any of the following apply: (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

13

{¶ 16} Appellant admitted to being the sole resident of the apartment.  A firearm was found in a bedroom, and appellant's prior conviction for a felony drug trafficking offense was stipulated to in the record.

{¶ 17} Upon review, we find sufficient credible evidence to support the convictions and find no manifest miscarriage of justice.

* * *

{¶ 21} . . . In its November 10, 2015 judgement entry denying the motion to suppress, the trial court found the following: "As to the second issue, Detective Steven Blust and Detective Brian Evans both testified that the defendant was given his Miranda warnings and testified that the defendant indicates that he understood his rights prior to speaking to Detective Blust.  The defendant testified and denied being read his Miranda warnings and denied saying anything incriminating to the officers.  The court heard the testimony and finds Detective Blust and Detective Evans to be credible.  Accordingly, the court finds that the defendant was given his Miranda warnings.  As to the issue of voluntariness of the defendant's statements the court finds those statements were given voluntarily by the defendant after considering the totality of the circumstances including, but not limited to, the age of the defendant, his prior criminal experience with law enforcement, the fact that he did not appear to be intoxicated or under the influence, and the lack of any evidence of threats, or physical deprivation or mistreatment by the officers.

{¶ 22} During the suppression hearing, both Sergeant Blust and Officer Evans testified appellant was read his *Miranda* rights, he acknowledged he understood them, and he waived his rights as he was willing to talk to the officers.  Appellant testified he was not read his rights, and he did not make any statements to the police officers other than stating that he did not live in the apartment, he was on his way out to buy coffee, and he asked for a cigarette.  Appellant admitted he was not under the influence of anything, he did not have any problems understanding what people were saying to him, and he understood everything that was happening that day.

{¶ 23} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159.

{¶ 24} We find the testimonies of Sergeant Blust and Officer Evans support the trial court's conclusions.

***

14

{¶ 30} . . . On direct, Sergeant Blust testified to observing cocaine and heroin being removed from appellant's person as "he was stuffing it down his butt." On cross-examination, defense counsel questioned Sergeant Blust on this issue because of some discrepancies between his trial testimony and his testimony during the suppression hearing e.g., whether some drugs were removed from appellant's "butt" or from his pants as he tried to stuff a bag down his pants. It involved a legitimate discrepancy to the witness's credibility. The reading of the report provided no new testimony to the case, as Sergeant Blust had already testified to appellant's statements therein.

{¶ 31} Appellant argues his counsel failed to effectively cross-examine the informant on tampering with the controlled buys. It is important to note that the actual transactions were recorded and played to the jury. Sergeant Blust, who prepared the informant for the buys and heard and observed the buys, testified to the procedures used during the controlled buys and actual buys appellant and Ms. Stone. Appellant also challenges the informant's credibility by claiming she was using "Craigslist" in a prostitution sting. A review of the record determines defense counsel cross-examined Ms. Stone on this issue.

{¶ 32} Appellant argues his counsel failed to request discovery on text messages between he and the informant. Evidence was presented that the text messages were not preserved.

{¶ 33} Appellant argues his counsel should have pursued the issue of DNA evidence on the firearm. Defense counsel cross-examined Sergeant Blust on the lack of any evidence testing on the firearm and any evidence as to ownership, as the firearm was discovered in a purse.

{¶ 34} Appellant argues his counsel did not present a cohesive closing argument. The defense theory of the case was that appellant was but a guest in Apartment C and he did not have any knowledge of the drugs and the firearm found in the apartment, and the informant gave contrived testimony. Defense counsel's closing argument centered on the basic premise of the defense's case e.g., the lack of credibility or forthrightness of the informant, an attack on Mansfield Police Officer Perry Wheeler collecting critical evidence when he arrived at the apartment a half-hour after the search had started, the issue of concealed drugs on the appellant's person, and the lack of proof that appellant lived in Apartment C.

{¶ 35} Defense counsel's reference to his discussion with his adult daughters resulted in his argument that he (defense counsel) was there "to try to do, the right thing."

ECF Doc. 8-1 at 104-12 (¶¶10-35) (internal record citations omitted).

### VII.  Analysis

#### A.  Ground One

Johnson's Ground One claim argues that the trial court's failure to suppress the testimony of Detective Blust and Detective Evans[4] violated his *Fifth Amendment* right against self-incrimination.  ECF Doc. 1-1 at 8-11.  Johnson filed a motion requesting the trial court to suppress any statements he allegedly made to the police because they were the product of an illegal arrest.  *Id.* at 12-13.  The trial court concluded that Detective Blust and Detective Evans both testified credibly that Johnson was read his *Miranda* warnings.  *Id.* at 22.  And the trial court acknowledged that Johnson testified at the suppression hearing that he was not read his *Miranda* warnings and did not make any incriminating statements to police.  *Id.*  The trial court found, after considering the "totality of the circumstances including, but not limited to, the age of the defendant, his prior criminal experience with law enforcement, the fact that he did not appear to be intoxicated or under the influence, and the lack of any evidence of threats, or physical deprivation or mistreatment by the officers," that Johnson's statements to the police were made voluntarily.  *Id.*  In light of its findings, the trial court denied the motion to suppress.  *Id.*  The Ohio Court of Appeals found that the testimony of Sergeant Blust and Detective Evans supported the trial court's findings.  *Id.* at 109 (¶24).

#### 1.  Procedural Default

Johnson's Ground One claim – that his *Fifth Amendment* rights were violated by the admission of his statements to the police in the absence of *Miranda* warnings – was procedurally

---

[4] Detective Blust is referred to as Sergeant Blust and Detective Evans is referred to as Officer Evans at various points in the record.

defaulted.[5]  Although Johnson raised this claim in his direct appeal to the Ohio Court of Appeals and in his state post-conviction petition, he failed to "fairly present" his claim at each level of the state courts' ordinary review process.  *O'Sullivan*, 526 U.S. at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Baston*, 282 F. Supp. 2d at 661; ECF Doc. 8-1 at 58, 115-144.  Johnson denied the state courts the opportunity to resolve his Ground One claim when he failed to file: (1) a timely direct appeal to the Ohio Supreme Court to challenge the Ohio Court of Appeals' August 2016 decision; or (2) any appeal from the state trial court's December 2016 decision dismissing his post-conviction petition.  Further, Johnson can no longer present his Ground One claim to the Ohio Supreme Court or appeal the denial of his post-conviction petition, because the time for doing so has passed.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1), (4); Ohio App. R. 4(A)(1), (B)(2)(D).

Johnson argues that his motion that his motion for leave to file a delayed appeal sufficiently raised the substantive issues that are the grounds for his habeas petition.  ECF Doc. 1-1 at 3.  This is incorrect.  Johnson's unsuccessful motion for a delayed appeal was insufficient to "fairly present" his claims to the Ohio Supreme Court, because the denial of his motion precluded him from asserting the legal and factual basis for his claims to the Ohio Supreme Court.  *O'Sullivan*, 526 U.S. at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Koontz*, 731 F.2d at 368; ECF Doc. 8-1 at 107-13, 144.  Moreover, even if Johnson had argued that the Ohio Supreme Court improperly denied his motion for a delayed appeal – something he has not asserted – that argument would fail, because state law violations are not cognizable on habeas review.  *Estelle*, 502 U.S. at 68; *Lewis*, 497 U.S. at 780; *Allen*, 845 F.2d at 614.  Thus,

---

[5] All of Johnson's claims for relief are procedurally defaulted for the reasons described in this section.  I will provide more extensive analysis of the default here and incorporate these points by reference in my discussion of the other grounds for relief below.

because Johnson failed to fairly present his self-incrimination claim to the Ohio Supreme Court, and because state law no longer allows him to raise that claim, it is procedurally defaulted. *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661.

Johnson does not argue in his habeas petition that he had good cause for his failure to comply with the deadline to appeal to the Ohio Supreme Court.  Because Johnson is represented by counsel in these proceedings, his habeas petition is not entitled to liberal construction.  *See Richmond v. Larose*, 2018 U.S. Dist. LEXIS 220311 *52 (N.D. Ohio Dec. 11, 2018); *Jackson v. Brunsman*, 2013 U.S. Dist. LEXIS 81824 *10 (S.D. Ohio 2013) (refusing to liberally construe pleadings from a habeas petitioners' state court appeal because he was represented by counsel for his appeal); *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546 (6th Cir. 1991) ("Liberal construction is not necessary where the claimant is aided by counsel in preparing his charge."). The court is not obligated to search Johnson's petition, supporting memorandum and traverse in search of a cause and prejudice argument.  Indeed, Johnson's traverse acknowledges that procedural default can be overcome by showing cause and prejudice but then offers no argument to show that he had cause to excuse the default of his Supreme Court appeal.  ECF Doc. 9 at 2-3. Thus, I conclude that Johnson has not shown cause to excuse his procedural default of his Ground One claim, and the claim may not be reviewed on that basis.

Johnson argues that his Ground One claim should be decided on the merits if it was procedurally defaulted because to not do so would result in a manifest injustice.  He asserts that had the trial court not denied his motion to suppress, Johnson "would not have been convicted, as he is actually innocent."

Although procedural defaults can be excused in order to avoid the manifest injustice that would result if an actually innocent person were convicted, Johnson's argument is not a true

actual innocence argument.  Johnson posits that had the trial judge granted his motion to suppress – based on his contention that a *Miranda* violation occurred – the jury would not have received evidence is used to convict him.  But that argument demonstrates that evidence sufficient to convict him existed.  He asserts: "[A]bsent the unconstitutional and unfounded testimony from Detectives Blust and Evans at the suppression hearing and at trial, the Petitioner would not have been convicted, as he is actually innocent of the charged crimes."  ECF Doc. 9 at 2.  Johnson has provided no new evidence in support of his claim that he is actually innocent. *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623.  The absence of new evidence alone dooms Johnson's actual innocence/manifest injustice argument.  *Schlup*, 513 U.S. at 315: "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  The Supreme Court added: "[t]o be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Id*. at 324.

Johnson's briefing does not accurately characterize how our court must analyze an actual innocence claim.  The Supreme Court has repeatedly stated that the claim of actual innocence, in order to be sufficient, must be a claim that the habeas petitioner is "factually" innocent as opposed to "legally" innocent.  *See Smith v. Murray*, 477 U.S. 527, 538-38 (1986).  In *McCleskey v. Zant*, 499 U.S. 467, 502 (1991), the Supreme Court rejected an actual innocence, manifest injustice claim when "the [constitutional] violation, if it be one, resulted in the admission of truthful inculpatory evidence which did not affect the reliability of the guilt determination."  And in *Sawyer v. Whitley*, 503 U.S. 333, 340 (1992), the Supreme Court observed that the "narrow exception" of "actual innocence" was "easy to grasp" in the non-

19

capital case setting: "A prototypical example of "actual innocence" in a colloquial sense is the case where the State has convicted the wrong person of the crime."

Again, the Supreme Court's decision in *Schlup* guides us in whether we evaluate Johnson's actual innocence claim in the way he argues – by *not considering* the evidence he contends was wrongly admitted – or whether we *must consider* such evidence.  The Court endorsed the following requirement: "The habeas court must make its determination concerning the petitioner's innocence "in light of *all the evidence*, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial."  *Schlup*, 513 U.S. at 328 (emphasis added).  Later, in *Bousley*, 523 U.S. at 630-31, Justice Scalia's dissent characterized the manner of proceeding adopted in *Schlup*:

> In *Schlup*, for example, we said that to sustain an "actual innocence" claim the petitioner must "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." 513 U.S. at 327 (emphasis added). That "new evidence" was to be evaluated, of course, along with the "old evidence," consisting of the transcript of the trial. The habeas court was to "make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup*, supra, at 328 (internal quotation marks omitted).

In *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court noted that while its prior holding in *Schlup* required the introduction of new, credible evidence that had not been presented at the habeas petitioner's trial, a habeas court is not limited to such evidence in its actual innocence review.  Instead, *House* endorsed the *Schlup* requirement that the court must evaluate "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily have been admitted under 'rules of admissibility that would govern at trial." *Id*. at 538 (internal quotation marks and punctuation omitted).  This court adopted the same

20

standard in *Lott v. Bagley*, No. 1:04cv822, U.S. Dist. LEXIS 91762 (N.D. Ohio Sept. 28, 2007), aff'd 569 F.3d. 547 (6th Cir. 2008).[6]  Further, at least one U.S. Circuit Court relying on *House* has specifically held that "custodial admissions made in the absence of *Miranda* warnings" are "properly considered in assessing factual innocence."  *See Hyman v. Brown*, No. 16-2723-pr, 2019 U.S. App. LEXIS 18786 *39 (2d Cir. June 24, 2019).

The foregoing cases make it plain that in evaluating Johnson's actual innocence claim, we must consider "all the evidence" even that which Johnson argues was admitted in violation of his *Fifth Amendment* rights.  In doing so, the conclusion is inescapable that this is not the rare case when someone who was actually innocent was convicted of a crime.  Johnson's own argument concedes as much by asking that we not consider the evidence the jury used to convict him.  Thus, Johnson cannot show that a manifest injustice would occur if his defaulted Ground One claim is not considered on the merits.

I recommend Johnson's Ground One claim be dismissed on the ground that it has been procedurally defaulted.

### 2.    Merits

Despite the conclusion that Johnson's Ground One claim has been procedurally defaulted, the court is not required to dispose of that claim on procedural grounds.  When a claim plainly lacks merit, the court has the option to dispose of the claim on the merits.

Law enforcement officials must warn an individual in their custody of his right to remain silent, that any statement he makes may be used against him, and that he has the right to counsel.

---

[6] In affirming *Lott*, the Sixth Circuit adopted the analysis by Judge O'Malley: "In her thorough and comprehensive opinion of September 28, 2007, District Judge O'Malley rejected Lott's gateway actual innocence claim, leaving no stone unturned in her analysis of the facts and the application of the law of procedural default and actual innocence. We attach her findings and conclusions on this issue (consisting of pages 28-40 of her opinion) as Exhibit 1 to this opinion and incorporate them by reference as our reasons for rejecting Lott's Schlup actual innocence claim and for affirming the judgment of the District Court.  *Lott*, 569 F.3d at 549.

*Miranda v. Arizona*, 384 U.S. 439, 478-79 (1966).  The admission of unwarned statements into evidence at trial is a constitutional violation of a defendant's *Fifth Amendment* rights.  *United States v. Patane*, 542 U.S. 630, 641 (2004).  But the rights encompassed in the *Miranda* warnings may be waived if the waiver is voluntary, knowing and intelligent.  *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Edwards v. Arizona*, 451 U.S. 477, 482 (1981); *Machacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir. 2000).  Whether such a waiver occurred is determined under the totality of the circumstances.  *Moran*, 475 U.S. at 421; *Seymour v. Walker*, 224 F.3d 542, 553-54 (6th Cir. 2000).  On habeas review, the petitioner has the burden to show that he did not waive his *Miranda* rights.  *Garner v. Mitchell*, 557 F.3d 257, 260-61 (6th Cir. 2009).

Often, the determination of whether *Miranda* warnings were given and whether the rights involved were waived hinges on the credibility of witnesses.  That is also true here.  Johnson points to his own testimony that he was not read his *Miranda* warnings, and Warden Wainwright cites the testimony of Detective Blust and Officer Evans, which indicated Johnson was given *Miranda* warnings and voluntarily spoke to the police afterward.  Faced with such testimony, the trial court was required to determine which version of the facts was most believable or credible.  The credibility of witnesses is a determination for the trier of fact.  *See United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005) ("we may not consider the credibility of witnesses"); *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) ("attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence").  This principle applies to suppression hearings as well as trials.  *Treesh v. Bagley*, 2007 U.S. Dist. LEXIS 28985 *101 (N.D. Ohio Mar. 31, 2007) *aff'd by* 612 F.3d 424 (citing *State v. Fanning*, 1 Ohio St. 3d 19, 20 (1982)).   Here, the trial court resolved the credibility issue against Johnson by finding the testimony of the law enforcement officers to be more credible.  This was a factual determination concerning who was to be believed.

22

In a habeas case, a determination of a factual issue made by a state court is presumed correct unless the petitioner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003).  This standard also applies to factual findings made by a state appellate court upon its review of the state trial court record.[7]  *Mason*, 320 F.3d at 614; *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).  The presumption particularly applies to credibility determinations, given the Supreme Court's ruling that such determinations are entitled to "no less" than "special deference" by the federal courts in habeas cases.  *Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985).  *See also Baker v. McMackin*, 1988 U.S. App. LEXIS 13491 *11-12 (6th Cir. Sept. 30, 1988) (unpublished) (accepting the trial court's determination that an officer's testimony – that petitioner was advised of his *Miranda* rights – was credible despite the petitioner testifying that he was not read his *Miranda* warnings).

Johnson argues that the motion to suppress should have been granted because his own testimony – that he was not read his *Miranda* warnings and that he did not offer any statements to the arresting officers – conflicts with the testimony of Detective Blust and Detective Evans.  ECF Doc. 1-1 at 10.  This is the same argument that Johnson made in his trial court suppression hearing and on appeal at the Ohio Court of Appeals.  ECF Doc 8-1 at 108-109 (¶¶21-22, 24).  Both the trial court and the court of appeals found the testimony of Detective Blust and Detective Evans – that Johnson was given *Miranda* warnings and afterward spoke to the police – was

---

[7] This presumption does not apply to mixed questions of law and fact, such as whether a suspect is in custody so as to require *Miranda* warnings.  *Thompson v. Keohane*, 516 U.S. 99, 109-10 (1995).  Johnson does not argue that he was not in custody, only that he was simply never read his *Miranda* warnings.  As a purely factual determination, Johnson has the burden to overcome the presumption on this issue. *See Givens v. Yukins*, 2000 U.S. App. LEXIS 31952 (6th Cir. 2000) (unpublished) ("The conflicting testimony between Petitioner and the detectives regarding her waiver of *Miranda* rights reduces Petitioner's habeas claims . . . to factual determinations.").

credible.  This court is not permitted to substitute its judgement regarding witness credibility for that of the state courts.  *Jamieson*, 427 F.3d at 402; *Martin*, 280 F.3d at 618; *Treesh*, 2007 U.S. Dist. LEXIS 28985 *101.  Johnson has proffered no evidence to corroborate his claim that he did not waive his *Miranda* rights.  *Garner*, 557, F.3d at 260-61.

Johnson argues that the state failed to provide evidence in support of its contention that his *Miranda* rights were not violated.  ECF Doc. 9 at 2.  On habeas review, however, it is the petitioner who has the burden of establishing that he did not knowingly and intelligently waive his *Miranda* rights.  *McAdoo*, 365 F.3d at 493-94; *Mason*, 325 F.3d at 737-38.  The burden here is even greater because Johnson's argument centers on the credibility of Detective Blust and Detective Evans.  *Patton*, 467 U.S. at 1038; *Brown*, 752 F.2d at 1147; *Baker*, 1988 U.S. App. LEXIS 13491 *11-12.  Johnson's reliance on his own testimony does not meet this burden. Johnson has not met his burden to show, by clear and convincing evidence, that the trial court's factual determination that he was read and waived his *Miranda* rights was erroneous.  He has likewise not rebutted the same factual findings by the Ohio Court of Appeals.  Further, Johnson can point to no decision by the Ohio courts that was contrary to or an unreasonable application of clearly established federal law.  And he has not shown that the Ohio courts made an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  In short, he has not met the burden imposed upon him by AEDPA to establish his right to relief on his Ground One claim.

Even if we were to assume that the trial court erred by admitting the testimony of Detective Blust and Detective Evans, it was likely harmless error.  A constitutional error that implicates trial procedures shall be considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Only a "structural defect" in the trial – an error that affects the framework in which the

trial proceeds rather than an error in the trial process itself – requires the reversal of a conviction without resorting to a harmless error analysis.  *Brecht*, 507 U.S. at 638 n. 9; *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991).  *See also United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006).  The *Brecht* standard may be used whether or not an error was reviewed for harmlessness by the state appellate court.  *Fry v. Pliler*, 511 U.S. 112, 121-22 (2007); *see also Vazquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007).  The inculpatory statement admitted into the trial record regarded Johnson's admission that he was the only resident in the apartment. ECF Doc. 8-1 at 108-109 (¶¶ 21-22).  The jury could have reasonably relied on other evidence in the record both to find that Johnson resided there – *i.e.*, Johnson's personal belongings found in the apartment, Johnson's attempt to encourage a friend to lie about his residence, and the recordings of the controlled buys at the apartment – and to convict him.  ECF Doc. 8-1 at 104-105 (¶¶11-13)

Because we are required to accept the state courts' factual findings concerning whether Johnson was given *Miranda* warnings and spoke to the police after waiting them, and because we may not substitute our judgment of the credibility of witnesses for that of the state courts, Johnson has not met his burden to show that he did not waive his *Miranda* rights.  Further, Johnson's has not addressed and cannot show that any potential constitutional violation was anything other than harmless error.

I conclude that Johnson's Ground One claim lacks merit and can be denied on that basis, should the court opt to reach the merits, rather than disposing of the claim on procedural grounds.

### B.      Ground Two

In his Ground Two claim, Johnson claims his trial counsel was ineffective to the point

that it constituted a violation of his *Sixth Amendment* right to counsel.  ECF Doc. 1-1 at 10-13.

Johnson supports his claim by alleging his counsel made the following errors:

> 1.   Prompting the State's witness to read Johnson's inculpatory statements
> into the record on cross examination;
> 2.   Failing to question the Confidential Informant as to whether she
> tampered with the evidence collected during controlled buys;
> 3.   Failing to move for discovery seeking text messages between the State
> and Johnson;
> 4.   Failing to question any State's witness regarding touch DNA on the
> firearm found in the apartment; and
> 5.   Confusing the jury and undermining the credibility of the defense
> during closing argument by; (a) discussing that counsel's family believes
> he should quit practicing law; (b) comparing the confidential informant to
> Judas, Benedict Arnold, and Mata Hari; (c) making distracting literary
> references; (d) making a baseless claim that police fabricated evidence;
> and (e) telling the jury that they were missing evidence – evidence which
> had been ruled inadmissible – drawing an objection by the State during
> closing argument.

ECF Doc. 1-1 at 10.  Johnson argues that these cumulative errors "resulted in a tainted

jury" and "ultimately derailed the petitioner's defense theory."  ECF Doc. 9 at 5.

### 1.      Procedural Default

Johnson's Ground Two claim was procedurally defaulted.  Johnson never "fairly

presented" his claim – ineffective assistance of trial counsel – to the Ohio Supreme Court.  ECF

Doc. 8-1 at 59-63, 115-144.  As discussed above, Johnson deprived the state courts of an

opportunity to fully and fairly review any of his federal constitutional claims when he failed to:

(1) timely commence an Ohio Supreme Court appeal of the Ohio Court of Appeals' August 2016

decision; or (2) appeal from the December 2016 Ohio Court of Appeals decision (ECF Doc. 8-1

at 165) rejecting his Rule 26(B) application to reopen his direct appeal.  *Wainwright*,

80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661; *see also* Ohio S. Ct. Prac. R. 7.01(A)(1), (4); Ohio R. App. P. 4(A)(1), (B)(2)(D).  Johnson suggests that the Ohio Supreme Court's "decision not to reach the merits . . . does not mean that the appeal issues are unexhausted for federal habeas purposes." ECF Doc. 8-1 at 3.  Again, this is incorrect.  Because Johnson did not "fairly present" his claim to the Ohio Supreme Court, and state law no longer allows him to present that claim, it is procedurally defaulted.  *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661.

Johnson's traverse acknowledges that procedural defaults can be excused upon a showing of "adequate cause and prejudice excusing the default or if a manifest injustice would occur if the issues were not heard on the merits." ECF Doc. 9 at 4.  Johnson's position on cause and prejudice is confusing.  Initially, he indicated that the cause for his failure to file a timely appeal to the Ohio Supreme Court on direct appeal was explained in his motion to file a delayed appeal: that he had been unable to obtain a copy of his case file and trial transcripts in time to prepare and file his pro se appeal.  *Id*. at 3-4.  But Johnson then discusses the law regarding the manifest justice exception but fails to make any argument that his claim qualifies for the exception.  *Id.* at 4-5.  Further, as discussed at length in regard to the Ground One claim above, Johnson has not submitted any new evidence supporting an actual innocence claim.

On the assumption that Johnson is contending that his failure to file a timely Ohio Supreme Court appeal was caused by his inability to obtain necessary case files, that is insufficient to show cause that is external to the defense.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).  In *Bonilla* the habeas petitioner had failed to file a timely Ohio Supreme Court appeal after his convictions were affirmed by the state appellate court.  He argued, among other things, that "he was unable to obtain a complete copy of his trial transcripts prior to the

27

expiration of the 45-day period provided for timely appeals to the Ohio Supreme Court." *Id.*
The Sixth Circuit affirmed the district court's dismissal of the petition, holding: "Bonilla's
mistaken belief that he required a complete copy of his trial transcripts prior to filing a notice of
appeal with the Ohio Supreme Court does not establish cause to excuse his procedural default."
*Id.* (citing *Hannah v. Conley*, 49 F.3d 1193 (6th Cir. 1995)).  *See also Russell v. Jackson*, No. 09-
4175, 2010 U.S. App. LEXIS 27912, *7 (6th Cir. 2010) (inability to obtain trial transcripts from
appellate counsel did "not establish 'a substantial reason that is external to himself and cannot be
fairly attributed to him.'").

Because Johnson has not shown cause for his procedural default of his Ground Two
claim, this court need not evaluate any claim of prejudice.  *Bonilla*, 370 F.3d at 497.  Even if we
determined to evaluate prejudice in the absence of a cause showing, Johnson has not made a
prejudice argument. Instead, as mentioned above, he has cited – but not argued – the law
indicating that procedural defaults can be excused in order to avoid the manifest injustice that
would result if someone actually innocent of the charges was convicted and punished.  As has
been explained above, Johnson has not made the showing necessary for a manifest injustice
argument to excuse his procedural default.

I recommend Johnson's Ground Two claim be dismissed as procedurally defaulted.
Accordingly, the Court need not reach the merits of Johnson's Ground Two claim.

### 2.    Merits

The court is not required to dispose of Johnson's Ground Two claim on procedural
grounds.  When a claim plainly lacks merit, the court has the option to dispose of the claim on
the merits.

A petitioner can raise a violation of his *Sixth Amendment* rights when he has received
ineffective assistance of counsel.  *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000).  Ineffective

28

assistance of counsel claims are analyzed by the well-known two-part test from *Strickland v. Washington*: a petitioner must show that (1) counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the *Sixth Amendment*;" and (2) the petitioner was prejudiced by counsel's errors such that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 687, 694 (1984).  Because both prongs of the test must be met, a reviewing court may dispose of an ineffective assistance of counsel claim when there is a lack of prejudice without also addressing the question of competence.  *Id.* at 697; *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004).

A habeas court's scrutiny of counsel's performance is highly deferential.  *Strickland*, 466 U.S. at 689.  The court must "reconstruct the circumstances of counsel's challenged conduct," "evaluate the conduct from counsel's perspective at the time," and "recognize that counsel is strongly presumed to have rendered adequate assistance."  *Id.* at 689-90.  *See also Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986) (discussing that a defendant challenging tactical decisions made by counsel must overcome the presumption that the challenged actions may be considered sound trial strategy).  An ineffective assistance of counsel claim is meritless where the underlying facts of the claim are "belied by the record."  *Goff v. Bagley*, 601 F.3d 445, 464 n.7 (6th Cir. 2010).  Counsel cannot be found to have been ineffective for not raising a meritless issue.  *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial").  Questions about the effectiveness of counsel's cross-examination are "strategic" questions and, in that context, effectively insulated from review.  *Hurley v. United States*, 10 F. App'x 257, 260 (6th Cir. 2001).  *See also Hodge v. Haeberlin*, 579 F.3d 627, 640-42 (6th Cir. 2009) (noting that, even when cross-examination resulted in the drawing out of damaging information, the habeas court need only determine

whether the state court unreasonably applied *Strickland* when it found the cross-examination

strategy may have been reasonable in the circumstances).  Though the right to effective

assistance of counsel extends to closing arguments, deference to tactical decisions made at that

stage is particularly important because of the broad range of legitimate defense strategy in a

closing presentation.  *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).

     "It is not enough to show that the errors had some conceivable impact on the outcome."

*Strickland*, 466 U.S. at 693 (citation and quotation marks omitted).  To satisfy the prejudice

prong of the *Strickland* test, counsel's errors must have been "so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  On habeas review, the court

must consider the errors in total against the totality of the evidence against the defendant.

*Stewart v. Wolfenberger*, 468 F.3d 338, 361 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at

695-96-).  "The essential question is whether better lawyering would have produced a different

result."  *Ward v. United States*, 995 F.2d. 1317, 1321 (6th Cir. 1993).  A reviewing court's

analysis must consider, beyond mere outcome determination, whether counsel's errors have

undermined the reliability of, and confidence in, the result and give attention to "whether the

result of the proceeding was fundamentally unfair or unreliable."  *Lockhart v. Fretwell*, 506 U.S.

364, 369-70 (1993).  Though a failure to adequately cross-examine a witness may not have been

a reasonable strategic decision, absent showing with reasonable probability that a different cross-

examination strategy would have led to a different outcome, such a failure does not rise to the

level of constitutionally ineffective assistance. *See Moss v. Hofbauer*, 286 F.3d 851, 865 (6th Cir.

2002) (explaining that counsel's failure to cross examine was not constitutionally ineffective

because cross-examination could have led to repetition of damaging testimony and an

explanation of the alleged discrepancies).  Even if the court assumes that counsel's closing

argument was ineffective, the error is harmless if other factors supported the result.  *See Smith v.*

*Spisak*, 130 S. Ct. 676, 687 (2010) (finding that, even if counsel's closing argument was ineffective, it was a harmless error based on the terrible facts of the crime and other factors of the trial).

Johnson's Ground Two claim fails on the merits because he has not shown that the state court of appeals reached a decision that was contrary to or an unreasonable application of *Strickland*.   And he cannot show that the state appellate court reached an unreasonable decision on a factual issue in light of the evidence presented.  Initially, I note that the Ohio Court of Appeals cited and applied *Strickland*, the clearly established federal law on ineffective assistance of counsel claims.  ECF Doc. 8-1 at 110.  The court found with respect to each of Johnson's complaints about his trial counsel that the attorney's strategy choices were not deficient or not prejudicial.  This court must defer to the Ohio court's application and conclusion in regard to Johnson's *Strickland* ineffective assistance claims.  Because there is nothing to suggest the Ohio Court of Appeals decision was contrary to or an unreasonable application of *Strickland*, Johnson's Ground Two claim fails on the merits.

Even if we were to independently assess Johnson's Ground Two claim, it is apparent that Johnson cannot show he was prejudiced by his counsel's alleged ineffectiveness.   Johnson's claim that his trial counsel erred by instructing a witness to read an inculpatory statement – Johnson's statement that he lived alone – into the record is based on the cross examination of Detective Blust.  ECF Doc. 8-1 at 111 (¶30).  Johnson cannot show he was prejudiced by this because Detective Blust had already testified that Johnson admitted to living alone.  *Id.* Additionally, trial counsel's request that Detective Blust read Johnson's statement was part of an attempt to impeach the credibility of his testimony.  The appellate court found that this was a reasonable strategy on cross-examination and, given that the relevant testimony was already part

of the record, this Court cannot find that the state court applied *Strickland* unreasonably.  *Hodge*, 579 F.3d at 640-42.

Johnson's contention that his trial counsel did not adequately cross examine the confidential informant, Bobbi Stone, regarding her purported evidence tampering focused upon on her inconsistent testimony regarding the value of heroin and how much heroin she actually purchased from Johnson.  ECF Doc. 1 at 4.  The appellate court reviewed the transcript and concluded that trial counsel had in fact "cross-examined Ms. Stone on this issue."  ECF Doc. 8-1 at 111 (¶31).[8]

Even if we were to review the appellate court's findings *de novo*, there are sufficient facts in the trial record to show that Johnson was not prejudiced by trial counsel's cross-examination of Stone.  ECF Doc. 8-5 at 16-17, 85-87.  The prosecution proffered three items into evidence – three separate exhibits consisting of three "bindles" of heroin each – which Detective Blust identified in his testimony was the heroin purchased during the controlled buys.  ECF Doc. 8-4 at 74-77.  Stone herself also identified the same exhibits as the heroin she purchased from Johnson. ECF Doc. 8-5 at 20-21.  Detective Blust also testified, on direct and cross-examination, to the process by which confidential witnesses are searched before and after controlled buys and the amount of money that was provided to Stone for each controlled buy.  ECF Doc. 8-4 at 22-24, 32-33, 43-44, 85-86.  Detective Evans testified to the value of the heroin as it was purchased during the controlled buys.  *Id.* at 191-192.  Detective Evans also testified that Stone turned over "three wax paper bindles" immediately after the March 17 buy and identified the same bindles in

---

[8] The appellate court's finding is accompanied by a citation to trial counsel's cross-examination of Stone regarding the nature of her relationship with Johnson which is an issue separate from Johnson's evidence tampering claim.  Though not necessary, out of an abundance of caution this court evaluates the trial transcript to safeguard against an error on the part of the state appellate court.  *See e.g.*, *Smith v. Wilson*, 231 F.Supp. 2d 650, 652-53 (N.D. Ohio 2002) (discussing that the court cannot fulfill its habeas corpus role without reference to testimony not discussed by the state appellate court).

evidence proffered by the prosecution.  *Id.* at 143-44.  Because Johnson's assertion that Stone tampered with the evidence is unsupported by the record as a whole, he cannot show that he was prejudiced by trial counsel's claimed ineffectiveness.  *Goff*, 601 F.3d at 464 n.7.  Further, trial counsel made a reasonable strategic decision to not press Stone to clarify her testimony on this point as further clarification, given the evidence in the record, would likely have been detrimental to Johnson's defense.  *Moss*, 286 F.3d at 865.

Johnson's argument that his trial counsel was ineffective for not seeking discovery of text messages between himself and the State is unsubstantiated because Detective Blust testified that such text messages are not preserved.  ECF Doc. 8-1 at 112 (¶32).  Johnson has not refuted this claim or offered any evidence to suggest that the text messages could have been discovered or that the failure to preserve them was improper.  Johnson cannot claim that his counsel was ineffective for not requesting evidence that did not exist.  *Coley*, 706 F.3d at 752.

Similarly, Johnson's argument that trial counsel did not question any State's witness regarding touch DNA on the recovered firearm fails because trial counsel cross-examined Detective Blust about the ownership of the gun.  ECF Doc. 8-1 at 112 (¶33).  Though trial counsel did not ask specifically about touch DNA, the testimony revealed that the crime lab also did not check for fingerprints on the gun.  ECF Doc. 8-4 at 99-100.  The appellate court found this testimony sufficient to establish that trial counsel had questioned Detective Blust about the lack of physical evidence on the firearm generally.  ECF Doc. 8-1 at 112 (¶33).  Because the testimony already revealed a lack of fingerprints, this court cannot find that the state court was unreasonable in finding that a failure to ask about touch DNA specifically constituted ineffective assistance of counsel.

Johnson claims that trial counsel's closing argument was confusing and undermined the credibility of both counsel himself and the Johnson's theory of the case.  ECF Doc. 1-1 at 10.

Throughout the closing argument, trial counsel focused on the key aspects of Johnson's defense including: (1) the credibility of Bobbi Stone; (2) missing text messages; (3) the credibility of the officers and the police department as a whole; (4) the ownership of the gun; and (5) Johnson's residence in the apartment.  ECF Doc. 8-1 at 112 (¶¶34-35).  Trial counsel's reference to a conversation where his daughters said that he should retire was part of an argument that he was trying to do the "right thing" in defending Johnson.  *Id.* (¶35).  Though Johnson, or even this court, may disagree with trial counsel's strategy of using literary references or alluding to excluded evidence, trial counsel is afforded extra deference when crafting a closing argument. *Hurley*, 10 F. App'x at 260.  Further, because Johnson has not offered evidence that the jury would have found him innocent but for trial counsel's closing argument, he cannot show that, even if trial counsel's strategy on closing argument was unreasonable, that he is entitled to relief. *Smith*, 130 S. Ct. at 687.  The Ohio Court of Appeals reached conclusions on all of these points which were supported by the record.  We are required to defer to these conclusions. Even if we weren't, I would find no basis for Johnson's Ground Two claim on the record presented.

Because Johnson cannot show that his trial counsel employed an unreasonable strategy or that he was prejudiced by such a strategy and because Johnson cannot show that the state courts misapplied clearly established federal law, should the Court elect to address Johnson's Ground Two claim on the merits, I recommend that the claim be denied for lack of merit.

## C.    Ground Three

Johnson's Ground Three claim seeks habeas relief based on his contention that the trial court convicted him based upon insufficient evidence[9] against the manifest weight of the

---

[9] Confusingly, Johnson's petition refers to both an evidence sufficiency claim and a manifest weight of the evidence claim.  *Compare* ECF Doc. 1 at 4, ECF Doc. 1-1 at 9 *with* ECF Doc. 1-1 at 9, which stated: "Petitioner was denied due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution when the Trial Court Convicted Him Based Upon Insufficient Evidence.  Appellant

evidence.  ECF Doc. 1 at 4; ECF Doc. 1-1 at 4, 9.  Specifically, Johnson asserts that the testimony of the confidential informant, Bobbi Stone, was not credible.  Id.  Johnson argues that the timeline Stone offered was inconsistent.  Stone testified that she had not used drugs since December 2014.  Id.  In January 2015, Stone met Johnson.  Id.  The next time Stone that she purchased drugs was in March 2015.  Id.  Stone testified that she never purchased drugs from Johnson, or anybody else in Johnson's apartment.  Id.  The record did not reveal the relationship of Johnson's relationship with Stone from January until March.  Id.  Johnson argues that the jury should not have believed Stone's testimony which describes her, a non-drug user, having identified Johnson as someone she could purchase drugs from despite not having purchased drugs from him, or anybody else in his apartment complex previously until the controlled buys that took place on March 17, March 30, and May 27, 2015.  Id. at 5-6.  Further, Johnson pointed out that Stone's testimony revealed that, despite arranging to purchase 0.5 grams of heroin, she only paid for 0.3 grams of heroin, and only turned over 0.1 grams of heroin to officers.  Id. at 6.

Johnson contends that officers also offered inconsistent testimony regarding the drugs that were allegedly found in his pants.  Id. at 7.  One officer testified that the drugs were found in a Kroger bag, despite no such bag having been offered in evidence.  Id.  The officer, attempting to explain the discrepancy, said that there were two bags of drugs.  Id.  However, another officer testified only one bag was recovered during the arrest.  Id.

---

[sic] convictions were against the manifest weight of the evidence . . ..”  Because manifest weight of the evidence claims raise only a non-cognizable state law claim, see Walker v. Engle, 703 F.2d 959, 969 (6th Cir. 1983), I will treat the Ground Three claim for relief as an evidence sufficiency challenge.  This approach is consistent with Sixth Circuit guidance.  See Nash v. Eberlin, 258 F. App'x 761, 765 (6th Cir. 2007).  Because Johnson is represented by counsel, his petition is not entitled to the liberal construction afforded pro se filings, and Johnson's several statements that the jury “lost its way” fit with a state law manifest weight of the evidence challenge (see, e.g. ECF Doc. 1-1 at 3, 6, and 8).  Despite the ambiguity, it is apparent Johnson intended to challenge the sufficiency of the state's evidence: “Based upon the foregoing, the jury should have had a reasonable doubt as to whether Petitioner possessed the firearm and lost its way when it found Petitioner guilty despite a lack of sufficient evidence to a finding of guilt beyond a reasonable doubt.”  ECF Doc. 1-1 at 8.

Johnson also asserts that officers ignored evidence that other people may have been selling drugs out of the apartment.  *Id.* at 6.  Johnson alleges that, at the time of his arrest, there was extra bedding, a women's purse, and that no keys to the apartment were found because, Johnson suggests, another resident of the apartment left with the keys.  *Id.* at 7.  The officers also failed to identify the lessee of the apartment.  *Id.*  Johnson also argues that the officers failed to properly identify that Johnson was actually the person who sold the drugs following the third controlled buy, by not confirming that he actually had the money used to purchase the drugs.  *Id.* at 6.  Johnson argues that these investigative failures should have created reasonable doubt in the minds of the jurors Johnson was the person selling drugs out of the apartment.  *Id.* at 7.

Johnson argues that, because the officers could not verify that he lived in the apartment, a reasonable jury should not have found him liable for a gun recovered from a purse in a different area of the home.  *Id.* at 8.  Further, Johnson contends that there was no evidence that he had ever actually possessed the gun found in the apartment – and used to convict him of having a weapon under disability – because the gun was found in a woman's purse in a different room in the apartment from where Johnson was found and because no fingerprints or DNA were obtained from the gun verifying Johnson's possession.  *Id.*

### 1.    Procedural Default

Because Johnson failed to perfect a timely appeal to the Ohio Supreme Court, his Ground Three claim was procedurally defaulted on the same basis explained in regard to his Ground One and Ground Two claims.

Warden Wainwright contends Johnson's Ground Three claim was also procedurally defaulted because it was never fairly presented in the Ohio Court of Appeals as a federally-cognizable evidence sufficiency challenge but, instead, as a noncognizable manifest weight of the evidence challenge.  As explained in footnote 8 above, Johnson's petition is ambiguous.  It

refers to the Ground Three claim as both an evidence sufficiency challenge and as a manifest weight challenge.  Johnson's petition is not entitled to liberal construction because it was prepared by counsel.  However, as I note in footnote 8, because the petition has used the term "insufficient evidence" it is reasonable to interpret the claim as asserting a cognizable claim. Moreover, the Ohio Court of Appeals, in rejecting Johnson's manifest weight Assignment of Error I, expressly found, "[W]e find sufficient credible evidence to support the convictions and no manifest miscarriage of justice."  ECF Doc. 8-1 at 106.  The Sixth Circuit observed in *Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007), that because the "determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence" it was appropriate for the habeas court to review an arguably defaulted evidence sufficiency claim.  The same situation exists here. I conclude, therefore, that Johnson's Ground Three claim was not procedurally defaulted for not having been fairly presented in his state direct appeal.  But it was procedurally defaulted for as a result of Johnson's failure to perfect a timely Ohio Supreme Court Appeal.

As has been explained in connection with Ground One and Ground Two above, Johnson has not made a sufficient cause and prejudice showing for his procedural default to be excused, and his attempt to argue an actual innocence claim is unavailing.  I recommend Johnson's Ground Three claim be dismissed on the ground that it was procedurally defaulted.

### 2.    Merits

The court is not required to dispose of Johnson's Ground Three claim on procedural grounds.  As noted in connection with Ground One and Ground Two above, when a claim plainly lacks merit, the court has the option to dispose of the claim on the merits.

The Due Process Clause of the Fourteenth Amendment requires a state to prove every element of a crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 315–16.  A habeas court

37

must determine "whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Id.* at 319 (emphasis in original). "[T]he Jackson inquiry does not

focus on whether the trier of fact made the correct guilt or innocence determination, but rather

whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402

(1993).  In evaluating the sufficiency of the evidence, however, the court may not consider the

credibility of witnesses or weigh the evidence. *See United States v. Marshall*, 248 F.3d 525, 536

(6th Cir. 2001).  Instead, the court examines the record to determine whether some evidence was

admitted on each element of the charged offenses.

Because both *Jackson* and AEDPA apply to a petitioner's sufficiency claim, federal

habeas review requires deference at two levels. "'First, deference should be given to the trier-of-

fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state

courts'] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658

F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).

The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively
> unreasonable," this court necessarily engages in a two-step analysis. First, we
> must ask whether the evidence itself was sufficient to convict under *Jackson*. The
> inquiry ends if the panel determines that there was sufficient evidence to convict
> [the petitioner]. If we find that the evidence is insufficient to convict, we must
> then apply AEDPA deference and ask whether the state court was "objectively
> unreasonable" in concluding that a rational trier of fact could find [the petitioner]
> guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  The Sixth Circuit has observed that

"'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a

nearly insurmountable hurdle.'"  *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d

703, 710 (7th Cir. 2009)).

The Ohio Court of Appeals listed the elements of the offenses of which Johnson was convicted and the evidence supporting each of those elements in paragraphs ten through sixteen of the court's opinion.  *See* page 13-14, *supra State v. Johnson*, Richland App. No. 15-CA-114, 2016-Ohio-5611, ¶¶ 10-16.  For the most part, Johnson's attack on the sufficiency of the evidence focuses upon the argument that the state failed to exclude the possibility that other people lived at the apartment where Johnson was found.  From this, he argues that the drugs and gun found at that location could have belonged to others and that the state failed to prove beyond a reasonable doubt that the drugs and gun were his.  ECF Doc. 1-1 at 6-8.

The state appellate court relied on Detective Blust's testimony that Johnson admitted he was the sole resident of the apartment at the time of his arrest.  ECF Doc. 8-1 at 104-106 (¶¶11, 16).  The appellate court also considered trial counsel's cross-examination of confidential informant Bobbi Stone regarding her relationship with Johnson.  *Id.* at 111 (¶31).  Johnson further questions the credibility of testimony of Stone, Detective Blust and Detective Evans that Johnson was in fact the individual from whom Stone purchased heroin.  ECF Doc. 1-1 at 5-6.  This court may not evaluate Johnson's claim that the witness testimonies were not credible.  *Jameison*, 427 F.3d at 394, 402 (6th Cir. 2005); *Martin*, 280 F.3d at 618.  Also, the appellate court noted that recordings of the controlled buys were played to the jury and the prosecution also offered other evidence that Johnson lived in the apartment.  ECF Doc. 8-1 at 104-105 (¶¶11, 13-14).

Applying the double deference standard discussed above, we must first recognize that the jury returned guilty verdicts against Johnson; this means it found there was sufficient evidence to convict.  The trial court denied Johnson's motions for judgement of acquittal under Ohio Crim. R. 29, meaning the trial judge found sufficient evidence to convict.  ECF Doc. 8-6 at 651.  And, as discussed above, the Ohio Court of Appeals, in disposing of Johnson's manifest weight of the

evidence claim found that there was sufficient evidence to convict.  ECF Doc. 8-1 at 106.  Our task is to determine whether the Ohio courts reached a decision that was contrary to or an unreasonable application of clearly established federal law announced in *Jackson* in this evidence sufficiency challenge, *Jackson*, *supra*.  Thus, we must determine whether the state appellate court reasonably concluded that the trial evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

Johnson's primary argument is that witness Bobbi Stone's testimony was too inconsistent to be believed.  He also argued that there were holes in the police officers' versions because one said there was one bag of drugs and another said there were two bags.  These are contentions that the testimony the jury was asked to consider was not credible.  As noted above, when evaluating the sufficiency of the evidence, courts cannot consider arguments that are based on a challenge to the credibility of witness testimony.  Thus, the trial court and Ohio Court of appeals did not misapply clearly established federal law in when evaluating Johnson's arguments about the testimony of Bobbi Stone.  A review of the record reveals quite plainly that there was evidence on each element of the offenses on which Johnson was found guilty, thus a rational jury could have found him guilty.  It does not matter whether another jury or even we might have had reasonable doubts about Johnson's guilt based on the credibility issues he has raised.  Our task it simple: to determine whether there was evidence which, if believed by a rational jury, could have supported a conviction.  There was.

Because a rational jury could have found Johnson guilty on each of the charges of which he was convicted and because there is nothing to suggest that the Ohio courts misapplied federal law in finding there to have been sufficient evidence to support those convictions, Johnson's Ground Three claim fails for lack of merit.  Should the court opt to address this claim on the merits, I recommend the claim be dismissed for lack of merit.

### D.     Ground Four

In his Ground Four claim, Johnson claims his appellate counsel was ineffective to the point that it constituted a violation of his *Sixth Amendment* right to counsel.  ECF Doc. 1-1 at 13-14.  Johnson argues that his appellate counsel was ineffective because he failed to (1) raise a claim regarding the State's failure to preserve and disclose text messages between Johnson and the State; (2) raise a claim regarding Detective Blust's tampering with evidence; (3) provide Johnson with copies of the trial transcripts upon request; and (4) attend oral argument.

### 1.     Procedural Default

Johnson's Ground Four claim was procedurally defaulted.[10]  Johnson never "fairly presented" his claim – ineffective assistance of appellate counsel – to the Ohio Supreme Court. Johnson raised these claims in his application to reopen his appeal with the Ohio Court of Appeals.  ECF Doc. 8-1 at 145-51.  The court of appeals denied Johnson's application and, because Johnson never appealed that decision to the Ohio Supreme Court he denied the state courts an opportunity to fully and fairly review the merits of his claim.  *Id.* at 165-66; *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661; *see also* Ohio S. Ct. Prac. R. 7.01(A)(4); Ohio R. App. P. 4(A)(1), (B)(2)(D).  Because Johnson did not "fairly present" his claim to the Ohio Supreme Court, and state law no longer allows him to present that claim, it is procedurally defaulted. *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661.

Johnson also cannot overcome his procedural default of his Ground Four claim.  In his traverse, as he does for his other claims, Johnson merely points out that a petitioner can

---

[10] I incorporate my more extended discussion of this default from pages 17-22, *supra*.

overcome procedural default with a showing of cause and prejudice or manifest injustice/actual innocence. ECF Doc. 9 at 6. Johnson, through counsel, discusses the law regarding procedural default, but does not argue that he has good cause or that manifest injustice would result if his case were not considered on the merits. *Id.* at 7. Instead, Johnson merely repeats the grounds on which he is bringing his claim. *Id.* Further, Johnson cannot overcome procedural default on the grounds that ineffective assistance of his appellate or his trial counsel precluded him from filing a timely appeal to the Ohio Supreme Court concerning the denial of his application to reopen his direct appeal. *Taylor v. Mitchell*, 296 F. Supp. 2d 784, 809 (N.D. Ohio 2003) (citing *Carpenter v. Edwards*, 529 U.S. 446, 453 (2000)). Thus, Johnson cannot overcome the procedural default of his Ground Four claim.

I recommend Johnson's Ground Four claim be dismissed as procedurally defaulted. Accordingly, the Court need not reach the merits of Johnson's Ground Four claim.

### 2. Merits

The court is not required to dispose of Johnson's Ground Four claim on procedural grounds. When a claim plainly lacks merit, the court has the option to dispose of the claim on the merits.

A criminal defendant who faces incarceration has the right to effective counsel under the Sixth Amendment at all "critical stages" of the criminal process, including the first appeal of right. *Madhi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008); *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006); *Lopez v. Wilson*, 426 F.3d 339, 353-54 (6th Cir. 2005). An Ohio defendant convicted of a noncapital offense does not have a constitutional right to counsel on appeal to the Ohio Supreme Court. *State v. Richey*, 73 Ohio St. 3d 523, 523 (1995) (citing *State v. Buell*, 70 Ohio St. 3d 1211, 1212 (1994)); *Hutton v. Mitchell*, 2013 U.S. Dist. LEXIS 80443 *138 (N.D. Ohio June 7, 2013), *rev'd on other grounds*, 839 F.3d 486 (6th Cir. 2016), *rev'd* 137 S. Ct. 1769

42

(2017); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("the right to appointed counsel extends to the first appeal as of right, and no further"); Ohio Rev. Code § 2953.02.  A claim that counsel was ineffective during a post-conviction proceeding is not a ground for relief in a § 2254 proceeding.  *Post v. Bradshaw*, 422 F.3d 419, 424 (6th Cir. 2005); *see also* 28 U.S.C. § 2254(i).

Claims of ineffective assistance of appellate counsel are subject to the same test articulated in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  *See also Smith v. Jago*, 888 F.2d, 399, 405 n.1 (6th Cir. 1989); *Bowen v. Foltz*, 763 F.2d 191, 194 (6th Cir. 1985).  As discussed in Ground Two, to support a claim of ineffective assistance of appellate counsel a petitioner must show (1) counsel performed unreasonably, and (2) the petitioner was prejudiced by counsel's unreasonable performance.  *Strickland*, 466 U.S. at 687, 694.  The petitioner must satisfy both parts of the test and the reviewing court is not required to evaluate a counsel's non-prejudicial performance.  *Id.* at 697; *Baze*, 371 F.3d at 321.

A failure by appellate counsel "to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result."  *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011) (citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008)).  A failure to raise a "dead-bang winner" – an issue obvious from the trial record that would have resulted in reversal – on appeal can constitute ineffectiveness counsel.  *Mapes v. Coyle*, 171 F.3d 408, 427-29 (6th Cir. 1999); *Mapes v. Tate*, 388 F.3d 187, 191-92 (6th Cir. 2004).  Appellate counsel is not ineffective simply because he did not advance every non-frivolous argument.  *Dufresne v. Palmer*, 876 F.3d 248, 257 (6th Cir. 2017) (citing *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004)); *Smith*, 477 U.S. at 536; *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008); *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  "Appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 666 (6th Cir. 2001).  The petitioner has the burden of showing

43

that the omitted claims are meritorious and would have impacted the outcome of the appeal. *Smith v. Anderson*, 104 F. Supp. 2d 773, 839-40 (S.D. Ohio 2000) *aff'd sub nom. Smith v. Mitchell*, 348 F.3d 177, 210 (6th Cir. 2003) (adopting and incorporating the district court's analysis). Appellate counsel failing to attend oral argument is not, without a showing that the outcome would have been different if counsel conducted oral argument.  *See Gates v. Hoffner*, 2018 U.S. App. LEXIS 31013 *9-10 (6th Cir. Mar. 23, 2018) (dismissing petitioner's claim because he could not show that he suffered prejudice when appellate counsel forfeited oral argument by not filing timely briefs); *Perrou v. Jones*, 2009 U.S. Dist. LEXIS 66993 *37-39 (E.D. Mich. Aug. 3, 2009) (though appellate counsel generally should not waive oral argument, petitioner did not show that he was prejudiced by his appeal being submitted on briefs alone).

The Ohio Court of Appeals addressed the same arguments in overruling Johnson's Ohio App. R. 26(B) application to reopen his direct appeal that he now asserts in his Ground Four claim.  As described above, this court must defer to the constitutional analysis of the state court unless the state court reached a decision that was contrary to or an unreasonable application of clearly established federal law.  The Ohio Court of Appeals relied on *Strickland* and corresponding Ohio cases to summarily dispose of Johnson's ineffective assistance of appellate counsel claim.  Thus, the court applied the correct law.  And the court did not unreasonably apply that law.

The Ohio Court of Appeals noted that it had disposed of Johnson's failure to preserve text messages argument on direct appeal.  ECF Doc. 8-1 at 166.  Thus, appellate counsel could not be faulted for not raising a claim that was actually raised.

Regarding Johnson's claims that the State failed to preserve or tampered with evidence, Johnson has not provided any evidence these claims are meritorious.  *Smith*, 104 F. Supp. 2d at 839-40.  A claim of a failure to preserve exculpatory evidence requires a showing that (1) the

exculpatory value was apparent before the evidence was destroyed; and (2) the evidence is of such a nature that the defendant would be unable to obtain evidence by other reasonably available means.[11]  *California v. Trombetta*, 467 U.S. 479, 488-89 (1984).  Because Johnson himself has not argued that the text messages he refers to would have been exculpatory, he cannot claim that the exculpatory value of the text messages would have been apparent at the time they were deleted.  Further, Johnson fails to explore other means through which he could have retrieved the text messages – *i.e.* by issuing a subpoena to the cellular provider.[12]

Johnson's ineffectiveness of appellate counsel claim fails because he does not provide any argument or evidence that he was prejudiced by appellate counsel's alleged ineffectiveness of not attending oral argument.  *Strickland*, 466 U.S. at 694 (1984).  Counsel filed timely briefs with the Ohio Court of Appeals, and Johnson has not shown that the state court probably would have reached a different outcome had counsel attended oral argument.  *Gates*, 2018 U.S. App. LEXIS 31013 *9-10; *Perrou*, 2009 U.S. Dist. LEXIS 66993 *37-39.  With regards to the evidence tampering and preservation claims, Johnson has not met his burden to show that the claims have merit.  *Anderson*, 104 F. Supp. 2d at 839-40.  Even if the court assumes that the claims have merit, Johnson also has not shown that his convictions would have been overturned had counsel asserted these claims.  *Id.*; *Henness*, 644 F.3d at 317.

---

[11] The Sixth Circuit has recognized that separate tests are applied where exculpatory versus "potentially useful" evidence is not accessible.  *United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001). Johnson does not articulate whether he believes the text messages would be exculpatory or merely potentially useful.  Though the court is not required to, it analyzes his claim under the broader test as applied to exculpatory evidence. If the text messages are determined to be merely potentially useful, Johnson must also show that the state acted in bad faith by failing to preserve the evidence.  *Id.* (*citing Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

[12] Johnson does not discuss what evidence he believes Detective Blust tampered with.  The court assumes that, because it was Detective Blust who testified that text messages could not be preserved, Johnson is asserting that evidence was not preserved due to actions by Detective Blust himself.  ECF Doc. 8-4 at 47. Therefore, this claim is rendered moot by Johnson's failure to satisfy the *Trombetta* standard regarding the text messages.

Finding that Johnson was not prejudiced by his counsel's alleged ineffectiveness, this court does not need to review appellate counsel's performance. *Strickland*, 466 U.S. at 697; *Baze*, 371 F.3d at 321. Further, Johnson fails to show that appellate counsel's performance was unreasonable. *Strickland*, 466 U.S. at 687. Even if the court assumes that Johnson's evidence claims are non-frivolous, short of a showing that the claims are "dead-bang winners," this court may not question the strategy of appellate counsel to not pursue any and every non-frivolous issue. *Dufresne*, 876 F.3d at 257; *Henness*, 644 F.3d at 317; *Coyle*, 171 F.3d at 427-29; *Tate*, 388 F.3d at 191-92. Further, as Johnson has failed to show that his claims regarding the evidence have merit, his appellate counsel cannot have performed unreasonably by not bringing those claims. *Greer*, 264 F.3d at 666.

Johnson's claim that appellate counsel was ineffective for not providing copies of the trial transcripts fails because he was not entitled to assistance of counsel in preparation for his appeal to the Ohio Supreme Court. *State v. Richey*, 73 Ohio St. 3d 523, 523 (1995) (citing *State v. Buell*, 70 Ohio St. 3d 1211, 1212 (1994)); *Andrews*, 2014 U.S. Dist. LEXIS 184764 *34; *Hutton*, 2013 U.S. Dist. LEXIS 80443 *138; *Wright*, 643 F. Supp. at 993. Further, Johnson does not offer any evidence showing that, even if he had received the transcripts in time to file his appeal, the Ohio Supreme Court would have reversed the court of appeals decision. *Strickland*, 466 U.S. at 694 (1984).

In all of his arguments concerning his Ground Four claim, Johnson has not acknowledged that we are required to defer to the Ohio Court of Appeals treatment of this claim in its rejection of Johnson's application to reopen his direct appeal. ECF Doc. 8-1 at 165. Upon review, it is quite apparent that that court correctly analyzed and applied *Strickland*. That being so, we cannot second guess that conclusion. Even if we could, the discussion above demonstrates that Johnson's Ground Four claim fails on the merits.

Accordingly, should the court opt to rule on the merits of Johnson's Ground Four claim, I recommend that the claim be denied for lack of merit under 28 U.S.C. § 2254.

## VIII.   Motion for Evidentiary Hearing

At the end of his petition, Johnson asserts that the court "at a minimum . . . should order an evidentiary hearing." ECF Doc. 1-1 at 14. Johnson, in support of his request for an evidentiary hearing, "contends that he has set forth facts . . . that entitle him to relief." *Id.* Johnson does not otherwise articulate an argument supporting his conclusory statement that he is entitled to an evidentiary hearing. *Id.*

A district court is not required to hold an evidentiary hearing if the record precludes habeas relief. *Schriro v. Landigran*, 550 U.S. 465, 474 (2007). As each of Johnson's four grounds of relief are procedurally defaulted, incognizable, or meritless, an evidentiary hearing in this case would serve no purpose.[13]

## IX.   Certificate of Appealability

### A.   Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v.*

---

[13] Even if Johnson's petition were not denied, "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring . . . an evidentiary hearing." *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (quoting *Stanford v. Parker*, 266 F.3d 422, 460 (6th Cir. 2001)).

47

*McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

 **B.**  **Analysis**

  When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485.  As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted."  *Id.* at 486.  If the Court accepts my recommendations, Johnson will not be able to show that the Court's rulings on his procedurally defaulted, meritless, and non-cognizable claims are debatable.  Thus, I recommend that a certificate of appealability not be issued.

## X.    Recommendations

I recommend that the Court DISMISS each of Johnson's four grounds for relief, DENY

his motion for an evidentiary hearing, and DENY Johnson's petition for writ of habeas corpus

(ECF Doc. 1).  I further recommend that Johnson not be granted a certificate of appealability.

Dated: August 8, 2019

Thomas M. Parker
United States Magistrate Judge

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after being served with a copy of this document.  Failure to file
objections within the specified time may waive the right to appeal the District Court's order.  *See
United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140
(1985), *reh'g denied*, 474 U.S. 1111 (1986).